UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,   CRIMINAL NO. 10-178 (JNE/JSM)

　　Plaintiff,

v.   REPORT AND RECOMMENDATION

JOAQUIN BRAVO FLORES,

　　Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Joaquin Bravo Flores' Motion to Dismiss Indictment [Docket No. 18].

Michael A. Dees, Assistant United States Attorney, appeared on behalf of the United States of America; Andrea K. George, Esq., appeared on behalf of defendant Joaquin Bravo Flores, who was personally present.

The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

**I.   BACKGROUND**

On June 23, 2010, a grand jury indicted Defendant Joaquin Bravo Flores ("Flores") for being an illegal alien in possession on of a firearm in and affecting interstate commerce (an Intratec, Model Tec 22, .22. caliber semi-automatic pistol), in violation of 18 U.S.C. § 922(g)(5)(A) and 18 U.S.C. § 924(a)(2).[1] See Docket No. 6. Section 922(g)(5)(A) provides:

　　(g) It shall be unlawful for any person—

---

[1] 18 U.S.C. § 924(a)(2) merely sets forth the penalty for a violation of § 922.

> * * *
>
> > (5) who, being an alien--
> >
> > (A) is illegally or unlawfully in the United States;
> >
> > * * *
> >
> > to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

Flores brought a Motion to Dismiss Indictment [Docket No. 18] arguing that the Indictment against him should be dismissed in light of United States Supreme Court's decision in District of Columbia v. Heller, --- U.S. ----, 128 S.Ct. 2783 (2008). Specifically, Flores submitted that 18 U.S.C. § 922(g)(5) violates his Second Amendment right to bear arms in his home.[2] The Government has filed a response to the Motion to Dismiss Indictment [Docket No. 25] and Flores filed a reply to the Government's response [Docket No. 28].

## II. ANALYSIS

In examining a motion to dismiss an indictment, it is the task of this Court to determine whether the Indictment is valid on its face. See Costello v. United States, 350 U.S. 359, 363 (1956). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). The presumption is that a statute is constitutional. See

---

[2] Flores maintains that the firearm at issue was recovered during the search of his home in his bedroom. The Government does not dispute this assertion.

Heller v. Doe, 509 U.S. 312, 320 (1993). Indeed, "[t]he burden is on the on attacking the legislative arrangement to negative every conceivable basis which might support it." Id.

In District of Columbia v. Heller, a District of Columbia special police officer, authorized to carry a handgun while on duty, applied for a registration certificate relating to handgun that he wished to keep at home, however, the District of Columbia rejected his application. 128 S.Ct. at 2788. The officer sought to enjoin the District of Columbia on Second Amendment grounds from enforcing the bar on the registration of handguns, the licensing requirement insofar as it prohibits the carrying of a firearm in the home without a license, and the trigger-lock requirement insofar as it prohibits the use of functional firearms within the home. Id. (citation and marks omitted). The majority characterized the issue as being whether the Second Amendment protects only the right to possess and carry a firearm in connection with militia service or whether it protects an individual's right to possess a firearm unconnected with service in a militia, and to use that firearm for traditionally lawful purposes, such as self-defense within the home. Id. at 2789. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, <u>the right of the people</u> to keep and bear Arms, shall not be infringed." U.S. Const. amend. II (emphasis added).

The majority held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." Id. at 2821-22. At the same time, the Supreme Court concluded that "the right secured by the Second Amendment is not unlimited:"

3

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2816-17; see also United States v. Fincher, 538 F.3d 868, 873-74 (8th Cir. 2008) (citation omitted) (addressing 18 U.S.C. § 922(o) and prohibiting the possession of machine guns under the Second Amendment). The Supreme Court noted that this list of prohibitions on the possession of firearms was not meant to be exhaustive. Id. at 2817 n.26.

In examining "the right of the people" to keep and bear arms, the Supreme Court in District of Columbia v. Heller noted that the term "the people":

> Unambiguously refers to all members of the political community, not an unspecified subset. As we said in United States v. Verdugo-Urquidez, 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990): '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.'

128 S.Ct. at 2790-91 (emphasis added). The Supreme Court also emphasized that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 2821 (emphasis added).

Based on the reasoning articulated by the Supreme Court in District of Columbia v. Heller, this Court concludes that an alien who is here in our country without the requisite permission from the United States is not part of our "national community" or "political community" so as to entitle him or her the right to bear arms under the Second Amendment. Moreover, an alien whose unsanctioned entry in the United States is a crime under 8 U.S.C. § 1325 is inherently not "law-abiding" so as to entitle this individual to use firearms under the ambit of the Second Amendment. Indeed, "Congress' intent in enacting §§ 922(g) and (h) . . . was to keep firearms out of the hand of presumptively risky people." Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 113 n.6 (1983) (citing United States v. Bass, 404 U.S. 336, 345 (1971)). Pursuant to District of Columbia v. Heller, this Court finds that an illegal alien appropriately falls within a class of people who are rightly exempted from possessing firearms, despite the Second Amendment.

Other courts which have examined this issue have all held that as set forth by District of Columbia v. Heller does not extend Second Amendment protections to illegal aliens. See, e.g., United States v. Lewis, Criminal Action No. 1:10-CR-007-RWS-CCH, 2010 WL 3370754 at *3 (N.D. Ga. May 26, 2010) (Report and Recommendation, adopted by 2010 WL 3370719 (N.D. Ga. Aug. 23, 2010)) ("Because Defendant is not a citizen, or at the least, a lawful resident with ties to the community, the Court concludes that she is not a member of the 'political community' whose rights are protected by the Second Amendment.") (citation omitted); United States. v. Yanez-Vasquez, No. 09-40056-01-SAC, 2010 WL 411112 at *2-4 (D. Kan. Jan. 28, 2010) (finding that "Plaintiff has not shown that illegal aliens are among 'the people' contemplated by the Second

Amendment" and that even if they had a Second Amendment right, Heller mentioned two of the prohibited categories in § 922(g) as exemptions from the Second Amendment and Heller should be read broadly to be inclusive of all of the prohibited categories in § 922(g), including the illegal alien category); United States v. Guerrero-Leco, No. 3:08cr118, 2008 WL 4534226 at *1 (W.D.N.C. Oct. 06, 2008) ("The Supreme Court did not find that all individuals present in America are protected by the Second Amendment. Rather, the Court described that protection as belonging to American citizens who 'inherited [it] from our English ancestors.' [Heller, 128 S.Ct.] at 2802 (quoting Robertson v. Baldwin, 165 U.S. 275, 281 (1897) (internal quotation marks omitted)). Nothing in the opinion purports to extend the Second Amendment's protection to those outside the American political community like the defendant who allegedly entered and remained unlawfully in the country. This inferior court will not read into Heller a more expansive right than recognized therein"); United States v. Solis-Gonzalez, No. 3:08-CR-145-MR-DCK-1, 2008 WL 4539663 at *3 (W.D.N.C. Oct. 6, 2008) ("the undersigned can find no persuasive support for Defendant's argument that the individual right to bear firearms conferred by Heller extends to aliens in possession of firearms.") (marks and citation omitted); United States v. Boffil-Rivera, Case No. 08-20437, 2008 U.S. Dist. LEXIS 84633 at *21-22 (S.D. Fl. Aug. 12, 2008) (finding that "under any historical interpretation of the enactment of the Second Amendment . . . the individual right to bear arms defined by Heller does not apply to an illegal and unlawful alien. This Defendant alleged by this Indictment to have been an unlawful alien, is not a citizen, is not ostensibly a person with identifiable and significant ties to community, and is someone who has any duty of allegiance to the United States. . . Mere presence here does not

entitle him to constitutional protection because he is clearly outside the scope of the "political community" who are conferred rights under Second Amendment.").[3]

Flores argued in his reply memorandum that because the Supreme Court assumed in INS v. Lopez-Mendoza, 468 U.S. 1032 (1984) that illegal aliens were entitled to Fourth Amendment protections, the term "the people" as set forth in the Supreme Court's Verdugo-Urquidez decision (referenced in District of Columbia v. Heller, 128 S. Ct. at 2790-91), must include illegal aliens and thus, Flores is entitled to the protections afforded by the Second Amendment. However, the Supreme Court made no finding in Lopez-Mendoza as to whether illegal immigrants are entitled to Fourth Amendment protections. Instead, the issue before the Supreme Court turned on whether a statement of unlawful presence in this country by Lopez-Mendoza, made subsequent to an allegedly unlawful arrest, must be excluded as evidence in a civil deportation hearing, and the Supreme Court's ultimate decision to not extend the exclusionary rule to deportation proceedings. See Lopez-Mendoza, 468 U.S. at 1034, 1048-51. Indeed, in its later Verdugo-Urquidez decision, the Supreme Court noted that it had yet to determine whether the Fourth Amendment applies at all to illegal aliens in the United States. 494 U.S. at 272-73 ("Our statements in Lopez-Mendoza are therefore not dispositive of how the Court would rule on a Fourth Amendment claim by illegal aliens in the United States if such a claim were squarely before us.").

This Court acknowledges that the Supreme Court noted in Verdugo-Urquidez that if the issue of whether the Fourth Amendment afforded protection to illegal aliens

---

[3] Boffil-Rivera was convicted and his conviction was affirmed. See United States v. Boffil-Rivera, 607 F.3d 736 (11th Cir. 2010). He did not appeal the District Court's decision with respect to his motion to dismiss the indictment.

7

was before them, its decision would depend on the extent to which illegal aliens had accepted "societal obligations":

> Even assuming such aliens would be entitled to Fourth Amendment protections, their situation is different from respondent's. The illegal aliens in <u>Lopez-Mendoza</u> were in the United States voluntarily and presumably had accepted some societal obligations; but respondent had no voluntary connection with this country that might place him among "the people" of the United States.

<u>Verdugo-Urquidez,</u> 494 U.S. at 272-73.

Thus, the Court can envision a difference in the Second Amendment rights of an illegal alien who has been in this country for a short period of time, moving from residence to residence, with no job; versus that of an illegal alien who has lived in this country for twenty years, has a family that resides here, a stable residence, is employed, is law abiding (save for the illegal entry) and is otherwise involved in the community. However, such an "as-applied" challenge cannot be raised on the present motion to dismiss the Indictment based on a facially unconstitutional challenge. <u>See</u> <u>Boffil-Rivera</u>, 2008 U.S. Dist. LEXIS 84633 at *11. In short, given the facts alleged in the Indictment, Flores has not shown that no set of circumstances exist under which § 922(g)(5)(A) could be Constitutionally valid. <u>See</u> <u>Salerno</u>, 481 U.S. at 745. Flores' motion to dismiss the Indictment should be denied.

### III. RECOMMENDATION

For the reasons set forth above, it is recommended that:

Defendant Joaquin Bravo Flores' Motion to Dismiss Indictment [Docket No. 18] be **DENIED**.

Dated: September 17, 2010

                                        s/ *Janie S. Mayeron*
                                        JANIE S. MAYERON
                                        United States Magistrate Judge

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 1, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **October 1, 2010**.